# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JEROME R. TOSI, JR.,**                        Chapter 7
     Debtor                           Case No. 06-13461-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD R. LASSMAN, CHAPTER 7
TRUSTEE,**
     Plaintiff

v.                                      Adv. P. No. 07-1002

**JEROME R. TOSI, JR., INDIVIDUALLY
AND AS TRUSTEE OF THE 39 LW
REALTY TRUST, AND DIANE L.
HENAULT-TOSI,**
     Defendants
and
**WILLIAM A. LOWELL AND
LAURA L. TOSI, TRUSTEES OF THE
JEROME R. TOSI, JR. 1988 TRUST,**
     Turnover Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are Cross-Motions for Partial Summary Judgment with

respect to Count I of the Chapter 7 Trustee's Complaint against Jerome R. Tosi, Jr. (the

"Debtor), his spouse, Diane L. Henault-Tosi ("Henault-Tosi"), and the trustees of the

Jerome R. Tosi, Jr. 1988 Trust, namely Laura A. Tosi, the Debtor's sister ("Dr. Tosi"), and

William A. Lowell, an attorney with the law firm of Choate Hall & Stewart.  The Court

conducted a hearing on January 23, 2008 and took the matters under advisement.  The

issues presented include whether the assets of the Jerome R. Tosi, Jr. 1988 Trust (the "1988

Trust") are property of the estate under 11 U.S.C. § 541(a), and whether Henault-Tosi has

a vested property interest in the 1988 Trust.

The material facts necessary to decide the issues are not in serious contention, and

Count I is ripe for summary judgment.  For the reasons set forth below, the Court finds that

Henault-Tosi lacks a vested interest in the 1988 Trust and, under Massachusetts law, in

particular the case of <u>Ware v. Gulda</u>, 331 Mass. 68 (1954), the Chapter 7 Trustee is entitled

to a determination that the assets of the 1988 Trust are assets of the Debtor's bankruptcy

estate.

The following constitutes the Court's findings of fact and conclusions of law in

accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on October 2, 2006.  At the time he

filed his petition, he and Henault-Tosi were beneficiaries of the 1988 Trust.  The Debtor is

denominated the donor of the 1988 Trust which contains a specific spendthrift provision.[1]

---

[1] The Court shall use the terms "donor" and "settlor" interchangeably.  A
"settlor" is "[t]he grantor or donor in a deed of settlement" or "one who creates a trust."
BLACK'S LAW DICTIONARY 1231 (5th ed. 1979).  A "donor" is also "[o]ne who creates a

The pertinent provisions of the 1988 Trust are as follows:

> I, JEROME R. TOSI, JR., of Weymouth, Massachusetts, as donor, and DAVID E. PLACE, of Milton, Massachusetts, and my stepfather, A. LEWIS ROGERS, of Chatham, Massachusetts, as trustees, hereby agree that upon transfer to the trustees of any property from me *or any other source*, as hereinafter described in <u>Article 2</u>, that they will administer the same, together with all additions from any source, in trust . . .

### Article 1. TERM OF TRUST

_____This trust is irrevocable . . . .

### Article 2. PROPERTY TRANSFERRED

_____I hereby agree to initially fund this trust with and accordingly transfer and assign to the trustees the following assets:

> a) The amount representing the sum of money I will receive from my said deceased father's life insurance and profit sharing proceeds;

> b) The said Promissory Note payable to the order of JEROME R. TOSI, JR. from my said brothers MARK G. TOSI and CHRISTOPHER TOSI;[2]

> c) Whatever sum of money I deem appropriate to put in this trust, in connection with the share of the proceeds I receive from the sale of said building located on 152-154 Franklin Street, New York, New York.

*** 

### Article 4. BENEFICIAL PROVISIONS DURING MY LIFE

> The trustees shall pay to me the net income of the trust, if any, at least quarter-annually. . . .
> From and after the "Final Payment Date", said trust property shall

_____

trust." <u>Id.</u> 439.

[2] The note was never executed.  As discussed below, the Debtor received monies directly from the sale or redemption of stock in Pastene Corporation in lieu of the note.

remain in trust and I shall have the right to withdraw at one time or from time to time up to fifty percent (50%) of the whole of the principal as I may from time to time request in writing delivered to the trustees during my lifetime; *or in the absence of contrary instructions from me,* the trustees shall distribute such amounts of the net income and principal as the trustees in their discretion shall determine to be necessary for my health, support and welfare and that of my spouse, if any, and my issue, if any.

### Article 5. DISPOSITION OF TRUST ASSETS AFTER MY DEATH

_____On my death, the trustees shall hold and distribute the assets of the trust as follows: . . .

(B) i) If my death occurs on or after the "Final Payment Date" the trustees shall pay over, transfer and convey the then remaining principal of such trust, together with any undistributed income, to such one or more of my said wife and issue in such manner, interests, and proportions and either in fee or *upon such new trusts, conditions or limitations as I may appoint by will,* expressly referring to this trust agreement. . . .

ii) On my death, if I have not effectively exercised said power and my said wife survives me, then the trustees shall pay to any one or more of my said wife and my issue living at the time of each payment such amounts or the whole of the net income and principal of such trust as the trustees in their discretion shall determine to be necessary for their health, support or welfare, and may add to principal, at the end of each year, any net income not so paid.

*** 

### Article 8. RESTRAINT ON ALIENATION

_____No interest hereunder in income or principal shall be subject to claims of creditors nor, except to the extent herein expressly authorized, shall the same be alienated by any beneficiary. . . .

(emphasis supplied).[3]

---

[3] There is no dispute that under the terms of the 1988 Trust the Final Payment Date occurred.

The Debtor executed the 1988 Trust on March 1, 1988, approximately eight months after his father, Jerome R. Tosi, passed away.  Although Jerome R. Tosi's will provided for the distribution of his estate equally among his four children, his death precipitated disputes among the Debtor and his siblings.  The Debtor and Dr. Tosi aligned on one side and employed David Place ("Attorney Place"), an attorney with the now dissolved law firm of Gaston & Snow.[4]  The Debtor's two brothers, Mark and Christopher Tosi, aligned on the other side and employed the law firm of Goulston & Storrs, which also represented the estate of Jerome R. Tosi.  The disputes centered on valuation of the stock of Pastene Corporation, a company which had been in the Tosi family for four generations and which had employed the Debtor until he was terminated by Mark and Christopher immediately following their father's death.

At the time the Debtor executed the 1988 Trust in March of 1998, he was 37 years old and unmarried.  He admitted that he was competent and that he had carefully reviewed and understood the trust document before signing it.  He admitted that the monies that were placed into the 1988 Trust were monies to which he was legally entitled.  He also admitted that he never took legal action to invalidate the 1988 Trust and, indeed, took advantage of the provision of Article 4 to obtain 50% of the principal to acquire his personal residence, a property located at 39 Ladd's Way, Scituate, Massachusetts.

---

[4] Dr. Tosi contacted Attorney Place.  She testified: "My brother did not have funds to hire a lawyer, nor did I, but that is when I contacted David Place and asked him to represent us."  She also testified that when she approached Attorney Place "it was as myself but with my brother as my - -  I don't know: person to protect."

5

Nevertheless, the Debtor represented that he signed the document at the insistence of Attorney Place and his sister, Dr. Tosi. He stated that "if I didn't sign it, I wasn't going to get anything." He added that "there was no other way," to obtain his inheritance because he was unemployed and lacked the resources to employ his own counsel. The Debtor also testified that he was traveling to Argentina around the time in an attempt to start a wine business. The Debtor complained to his sister about the trust vehicle, indicating his preference to invest the monies he was to receive from his inheritance in an account he had in Vermont. According to the Debtor, Dr. Tosi, said "'No can do . . . It has to go in the trust." Dr. Tosi, in her deposition testimony, agreed with her brother's deposition testimony, stating "the fact of the matter is my brother had no choice. He was given no other option."

Dr. Tosi explained why a spendthrift trust was prepared for the Debtor. She represented that the Debtor experienced "extensive health issues" from the time he was a small child and that "an overriding concern was to be sure that no matter what his health issue, that there would always be moneys to support him." She also stated that at the time the 1988 Trust was prepared the Debtor "had had one and only one employer [Pastene Corporation] who had underpaid him; and he, therefore, had very limited marketable skills." When asked whose idea it was to establish the 1988 Trust, she stated:

> It was, I think an outcome rather than a decision, per se. There was a need to do several things. There was a need to pay my father's extraordinary, at the time, inheritance taxes. There was a need to be sure that there was enough money if the Feds decided enough - - not enough had been paid. There was a need to maintain lump sums, and there was need to be sure that my brother had an income as he had been removed from his position at

6

Pastene by my younger brothers.

Jerome R. Tosi designated Dr. Tosi as one of four executors of his estate and she eventually was appointed Temporary Administrator. The other executors were Christopher and Mark Tosi and Alvaro B. Pirani, who succeeded Jerome R. Tosi as president of Pastene Corporation. Dr. Tosi explained that the disputes with respect to the shares in Pastene Corporation, which was her father's most significant asset, were resolved through a Memorandum of Understanding which was amended several times. She stated the following:

> At the risk of being inappropriate, what you're seeing is that there was no - - very little cash, and so that what you see here is one of many efforts to figure out how one was going pay the taxes and have something left over; and so much of the wording, particularly, in my brother's trust document, which was developed very early in [sic], I believe, February of '88, was simply as a means of going forward, and so I think a lot of confusion has been created because of talk of notes and this and that and whatnot . . . but ultimately, somehow or other, my brothers came up with cash and simply paid us cash which went into a trust for myself and a trust for my brother, and so a lot of this mumbo-jumbo, particularly makes no sense to me simply because of the way it ended up.

Dr. Tosi testified that the settlement would not have been consummated if the Debtor had not signed the 1988 Trust as the settlor. She also indicated that a similar trust was established for her, but hers was revocable. Dr. Tosi testified that by having her monies placed in trust "[i]t helped my brother accept that his money was in trust."

Under the terms of his father's will and through the Memorandum of Understanding and its series of amendments, the Debtor was entitled to receive proceeds of life insurance policies on the life of his father and proceeds from his father's pension and

profit sharing plan, proceeds which totaled approximately $210,000, as well as certain severance payments in connection with his termination from Pastene Corporation. These severance payments, according to the Memorandum of Understanding totaled $175,000. The 1988 Trust also received $605,000 in 1990 in proceeds from the sale or redemption of stock in Pastene Corporation.

As noted above, in 1990, the Debtor, pursuant to Article 4 of the 1988 Trust, withdrew approximately $375,000 which he used to acquire his personal residence at 39 Ladd's Way, Scituate, Massachusetts. A "Statement Summary" for the period between January 1, 1990 and December 31, 1990 prepared for the 1988 Trust by attorneys at Gaston & Snow reveals the following:

|  | INCOME | PRINCIPAL | INVESTMENTS |
|---|---|---|---|
| 01/01/90 BEGINNING BALANCES | 23,479.68-* | 11,436.56 * | 176,138.90 * |
| NET INTEREST INCOME | 16,400.63 |  |  |
| NET DIVIDEND INCOME | 1,197.00 |  |  |
| MISCELLANEOUS RECEIPTS |  | 618,126.88 |  |
| SALES, CAPITAL CHANGES AND OTHER ASSETS CHANGES |  | 821,542.21 | 797,638.90- |
| PAYMENTS TO OR FOR BENEFICIARIES | 24,000- | $395,811.88 |  |
| TRANSFERS | 5,381.48 | 5,381.48 |  |
| WITHDRAWALS AND DISTRIBUTIONS |  |  | 20,000- |
| FEES | 15,726.06- | 44,557.70- |  |
| TAXES PAID | 1,454.74- | 2,757.00- |  |
| PURCHASES AND OTHER MISCELLANEOUS DISBURSEMENTS |  | 952,168.20- | 952,168.20 |
| 12/31/90 ENDING BALANCES | 42,681.37-* | 50,429.91 * | 310,668.20 * |

Dr. Tosi represented that she believed that the value of the 1988 Trust, at least at the

time of her deposition on October 4, 2007, was approximately $280,000.

## III. POSITIONS OF THE PARTIES

A. The Chapter 7 Trustee

The Chapter 7 Trustee maintains that assets of the 1988 Trust are property of the

estate under 11 U.S.C. § 541(a) and the decision of the Supreme Judicial Court in Ware v.

Gulda, 331 Mass. 68, 70 (1954).  In that case, the court stated:

> "The established policy of this Commonwealth long has been that a settlor
> cannot place property in trust for his own benefit and keep it beyond the
> reach of creditors. Pacific National Bank v. Windram, 133 Mass. 175; Jackson
> v. Von Zedlitz, 136 Mass. 342; Taylor v. Buttrick, 165 Mass. 547, 551, 43 N.E.
> 507; Forbes v. Snow, 245 Mass. 85, 89, 140 N.E. 418."
>
> The rule we apply is found in Restatement: Trusts, § 156(2): 'Where a person
> creates for his own benefit a trust for support or a discretionary trust, his
> transferee or creditors can reach the maximum amount which the trustee
> under the terms of the trust could pay to him or apply for his benefit.' It has
> substantial support in authority. Greenwich Trust Co. v. Tyson, 129 Conn.
> 211, 224, 27 A.2d 166; Warner v. Rice, 66 Md. 436, 8 A. 84; Hay v. Price, 15
> Pa.Dist. R. 144; Menken Co. v. Brinkley, 94 Tenn. 721, 728-729, 31 S.W. 92;
> Petty v. Moores Brook Sanitarium, 110 Va. 815, 817, 67 S.E. 355, 27 L.R.A.,
> N.S., 800; Scott, Trusts, § 156.2; Griswold, Spendthrift Trusts (2d ed.) § 481.
> *See* Am. Law of Property, § 23.18. Although every exercise of the power
> might take property away from the remaindermen, that is no objection where
> the trustee could pay the entire principal to the creator of the trust.

Ware v. Gulda, 331 Mass. at 70-71 (quoting Merchants Nat'l Bank v. Morrissey, 329 Mass.

601, 605 (1953)).

The Chapter 7 Trustee emphasizes that the Debtor created the 1988 Trust and

funded it with his own assets, namely "monies to which he was legally entitled," and that

the trustees of the 1988 Trust "have the discretion to pay any and all of the trust's assets for

the Debtor's 'health, support and welfare.'"

9

Anticipating arguments that the Debtor did not self-settle the 1988 Trust because the trust was funded from sources other than the Debtor's funds and that the 1988 Trust document was executed under duress, the Chapter 7 Trustee asserts that neither argument has merit. He maintains that because the Debtor admitted that he was legally entitled to his share of his father's estate, it is irrelevant that the monies did not actually pass through his hands before being placed in trust.

With respect to the potential argument that the Debtor executed the trust document under duress, the Chapter 7 Trustee points to the Debtor's acknowledgment that he was bound by the 1988 Trust document and never took legal action to invalidate it. Relying upon Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 26 (1st Cir. 2002), the Chapter 7 Trustee asserts that the Debtor cannot create a genuine issue of material fact by the expedient of contradicting his own answers to unambiguous questions. Citing, *inter alia*, Cabot Corp. v. AVX Corp., 448 Mass. 629, 642 (2007), the Chapter 7 Trustee also observes that the Debtor accepted hundreds of thousands of dollars in payment made to him or on his behalf by the 1988 Trust, thereby ratifying and affirming its terms.

The Chapter 7 Trustee also contends that Henault-Tosi's interest in the 1988 Trust as a beneficiary does not limit his ability to obtain its assets. Citing Markham v. Fay, 74 F.3d 1347, 1358-59 (1st Cir. 1996), he asserts that Henault-Tosi's interest in the 1988 Trust is unvested, and thus the Court must determine that he is entitled to the maximum amount which the trustees under the 1988 Trust could pay to the Debtor or apply for his benefit under the terms of the trust.

10

B. The Debtor and Henault-Tosi

_____Relying upon 11 U.S.C. § 541(c)(2), the Debtor and his spouse contend that Massachusetts recognizes the validity of spendthrift clauses, and, therefore, the assets of the 1988 Trust are exempt from inclusion in the Debtor's bankruptcy estate.   They emphasize that the 1988 Trust is irrevocable and that the Debtor lacks power to amend the trust, to appoint trustees, or to assign or alienate trust assets.  Citing, *inter alia*, Bank of New England v. Strandlund, 402 Mass. 707 (1988), and Broadway Nat'l Bank v. Adams, 133 Mass. 170 (1882), they assert that Massachusetts courts would find that the spendthrift clause in the 1988 Trust effective "in the instance where the beneficiary of the trust instrument neither possessed nor retained any power to amend, revoke or invade the principal of the trust nor was given nor had reserved unto the beneficiary any other powers regarding the administration, maintenance or distribution of the corpus."

The Debtor and his spouse cite numerous bankruptcy court decisions, including decisions from this district, such as Aylward v. Landry (In re Landry), 226 B.R. 507 (Bankr. D. Mass. 1998), and  In re Cowles, 143 B.R. 5 (Bankr. D. Mass. 1992), and conclude that in order for trust assets to be included in the bankruptcy estate there must be a "finding that the trust was self-settled *and* that certain powers were reserved by the settlor/beneficiary or settlor/trustee . . . ." (emphasis supplied).

The Debtor and his spouse also argue that the circumstances surrounding the formation of the 1988 Trust indicate that the Debtor "was not the settlor or donor in any sense of the word."  Based upon the decision in  Hobbs v. Cunningham, 273 Mass. 529

(1930), they assert that the executors of Jerome R. Tosi's estate held title to his personal property and that "any property to which the debtor may have been entitled actually vested in the fiduciaries of Tosi, Sr.'s estate and not otherwise." They emphasize the Debtor's circumscribed role following Jerome R. Tosi's death, noting that he "was afforded no opportunity or allowed to give any substantive instructions to David Place. . . ." They add that the Debtor was told that he was required to sign the 1988 Trust as well as the Memorandum of Understanding and related documents in order to obtain his inheritance. They also note that at the time the 1988 Trust was created no funds had been placed into the trust and that when the trust was funded monies came from the executors, not the Debtor. In other words, in their view, the person or persons who made contributions to the trust, in this case the executors of Jerome R. Tosi's will, were the actual settlors. According to the Debtor and Henault-Tosi, the Debtor cannot be said to have voluntarily placed his assets in trust if he did not have the requisite intent to do so and he lacked the ability to understand that he had other legal options.

Finally, the Debtor and Henault-Tosi maintain that Henault-Tosi has an equitable interest in the 1988 trust. Indeed, they maintain that she has a 100% equity interest. In their view, the spendthrift clause operates to shield that interest from reach by the Chapter 7 trustee. Citing Markham v. Fay, 74 F.3d 1347 (1st Cir. 1996), they state that "[n]o one, not Tosi nor the Trustees, has the right to remove Diane Henault-Tosi as a beneficiary," adding, "unlike the beneficiaries in Markham v. Fay [sic], Diane Henault-Tosi is a vested beneficiary."

12

## IV. DISCUSSION

A. <u>Summary Judgment Standard</u>

In <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760 (1st Cir.1994), the United States

Court of Appeals for the First Circuit set forth the applicable summary judgment standard.

It stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.

37 F.3d at 763 (citations omitted, footnote omitted).

As noted above, the Court finds an absence of genuine issues of material fact.  In

particular, the Court finds that, even if the Debtor executed the 1988 Trust as settlor under

a misapprehension of his legal rights and at the insistence of an attorney who may or may

not have represented his interests, as opposed to those of his sister, it is undisputed that

he subsequently withdrew principal and accepted payments from the trustees of the 1988

Trust over a period of approximately 15 years without challenge.

B. <u>Applicable Law</u>

As this Court observed in <u>Aylward v. Landry (In re Landry)</u>, 226 B.R. 507, 510

(Bankr. D. Mass. 1998), the starting point for any analysis of whether a debtor's bankruptcy

estate has an interest in a trust that can be reached by a trustee is section 541(a) of the

13

Bankruptcy Code which provides that, except as provided in subsections 541(b) and (c)(2), a debtor's bankruptcy estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case. . . ." 11 U.S.C. § 541(a).  The Supreme Court has determined that the scope of section 541(a) is broad.  *See* United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n. 9  (1983) (based upon the statutory language and legislative history, "Congress intended a broad range of property to be included in the estate"); Tringali v. Hathaway Machinery Co., Inc., 796 F.2d 553, 560 (1st Cir.1986)(same). In ascertaining the existence and scope of a debtor's legal and equitable interest in property, the Court must look to state law. Riley v. Tougas (In re Tougas), 338 B.R. 164, 173 (Bankr. D. Mass. 2006)(citing, *inter alia*, Butner v. United States, 440 U.S. 48, 54 (1979), and Braunstein v. Beatrice (In re Beatrice), 277 B.R. 439 (Bankr. D. Mass. 2002), *aff'd*, 296 B.R. 576 (B.A.P. 1st Cir. 2003)).

Section 541(c)(2) of the Bankruptcy Code carves out an exception to section 541(a). It provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).  As the court stated in In re Spenlinhauer, 182 B.R. 361 (Bankr. D. Me.1995), *aff'd*, 195 B.R. 543 (D. Me.1996), *aff'd*, 101 F.3d 106 (1st Cir. 1996), "[s]ection 541(c)(2) and its historical antecedents have operated to save unto the debtor his or her interest in a valid 'spendthrift trust.'" 182 B.R. at 363 (citations omitted).

Resolution of the Cross-Motions for Summary Judgment is dependent upon state law.  Massachusetts recognizes the validity of spendthrift trusts, and spendthrift clauses

are generally enforceable in the Commonwealth.  *See* <u>Landry</u>, 226 B.R. at 510; <u>In re CRS Steam, Inc.</u>, 217 B.R. 365, 371 (Bankr. D. Mass. 1998); <u>In re Kellogg</u>, 179 B.R. 379, 389 (Bankr. D. Mass. 1995).  *See also* <u>Bank of New England v. Strandlund</u>, 402 Mass. 707, 708 (1988); <u>Ames v. Clarke</u>, 106 Mass. 573 (1871).  Nevertheless, "when a person creates for his own benefit a trust for support or a discretionary trust, his creditors can reach the maximum amount which the trustee, under the terms of the trust, could pay to him or apply for his benefit. . . .  This is so even if the trust contains spendthrift provisions."  <u>State Street Bank and Trust Co. v. Reiser</u>, 7 Mass. App. Ct. 633, 636 (1979)(citing, *inter alia,* <u>Ware v. Gulda</u>, 331 Mass. 68, 70 (1954), <u>Merchants Nat'l Bank v. Morrissey</u>, 329 Mass. 601, 605 (1953), and Restatement (Second) of Trusts § 156(1)(1959)).  *See also* <u>Markham v. Fay</u>, 74 F.3d 1347, 1356 (1st Cir. 1996).  The principle enunciated by both federal and state courts in Massachusetts is not unique and many, if not most, states adhere to it.  *See, e.g.,* <u>Menotte v. Brown (In re Brown)</u>, 303 F.3d 1261, 1266 n.6 (11th Cir. 2002), *re'hrg denied*, 67 Fed. Appx. 590 (11th Cir. 2002).  The United States Court of Appeals for the Fifth Circuit articulated the reason for the rule in <u>Shurley v. Texas Comm. Bank-Austin (In re Shurley)</u>, 115 F.3d 333, 338 (5th Cir. 1997).  It stated:

> Public policy does not countenance devices by which one frees his own property from liability for his debts or restricts his power of alienation of it; and it is accordingly universally recognized that one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation. The rule applies in respect of both present and future creditors and irrespective of any fraudulent intent in the settlement or purchase of a trust.

Id. at 338 (footnote omitted).

In Landry, this Court, citing, *inter alia,* In re Kellogg, 179 B.R. at 389, observed that "a spendthrift trust is ineffective against creditors if the settlor creates a trust for the settlor's own benefit and retains the power to amend, revoke or invade the principal of the trust."   Based upon that statement, the Debtor and Henault-Tosi assert that for a spendthrift provision to be unenforceable under bankruptcy law the settlor must retain indicia of control.  This Court rejects that assertion.  While bankruptcy courts frequently encounter instances where settlors have reserved such powers to themselves, *see, e.g.,* In re Tougas, 338 B.R. 164 (Bankr. D. Mass. 2006); In re Beatrice, 277 B.R. 439 (Bankr. D. Mass. 2002), *aff'd,* 296 B.R. 576 (B.A.P. 1st Cir. 2003); In re Cowles, 143 B.R. 5 (Bankr. D. Mass. 1992), "dominion over the trust assets is irrelevant to the analysis" of whether a self-settled trust with a spendthrift provision is property of the estate.  In re Brown, 303 F.3d at 1267 n. 9.  In Brown, the Eleventh Circuit explained:

> The issue of self-settlement is separate from the issue of control, and either can serve as an independent ground for invalidating a spendthrift provision. *See, e.g.*, In re Spenlinhauer, 182 B.R. at 363 (declining to address beneficiaries' control over trust where the trust was self-settled and, therefore, the spendthrift provision was ineffective on that basis alone); In re Wheat, 149 B.R. at 1004 ("However, the Debtor's degree of control is irrelevant in this case since one cannot create a spendthrift trust for oneself in Florida."); Walro v. Striegel ( In re Walro), 131 B.R. 697, 701 (Bankr. S.D. Ind.1991) (holding self-settlement prevented agreement from qualifying as a spendthrift trust, although beneficiary did not have any control over assets).

Id.  The court further observed that although "some cases intertwine the issues of self-settlement and control," facts can support invalidity of self-settled spendthrift trusts

on both grounds. Id. (citations omitted).

C. Analysis

To prevail on his Motion for Partial Summary Judgment, the Chapter 7 Trustee must establish that the rule set forth in Ware v. Gulda and the Restatement (Second) of Trusts, § 156(2) applies, warranting both a determination that the spendthrift provision is invalid under section 542(c)(2) and a determination that the assets of the 1988 Trust are property of the estate under section 541(a). Before examining that issue, though, this Court must consider Henault-Tosi's interest in the 1988 Trust.

In Markham v. Fay, the United States Court of Appeals for the First Circuit reviewed circumstances under which a tax lien could attach to property in a number of trusts in which a taxpayer was both settlor, trustee, and beneficiary. The court specifically discussed application of trust principles when a settlor is also one of several beneficiaries. 74 F.3d at 1356. The First Circuit stated: "Whether the tax lien in this case attaches to the entire property of each trust depends on whether the trust instruments give Fay [the settlor/beneficiary] the power to eliminate the other beneficiaries' interests." Id. In Markham, Fay designated herself as trustee and retained the power to eliminate the interests of other trust beneficiaries by reserving to herself "the right 'to alter, amend and revoke this Trust, in whole or in part, and to terminate the same.'" Id. at 1357. Additionally, she could substitute or strike out other beneficiaries and vary the income or principal paid to them, and, as trustee, she had expansive powers to manage and control the trust property. Id. The First Circuit also observed that the terms of the trust did not

17

give the beneficiaries "the right to any particular proportion of the trust income or principal, the right to receive it at any particular time or interval, the right to receive it for their support or any other definite purpose, or the right to receive it free of trust when the trust terminates. Id.  Moreover, the court recognized that the interest of the remainderman, Fay's sister, "could amount to nothing if Fay decided to pay all of the income and principal to herself."  Id.

In view of the status of the beneficiaries and the remainderman, the First Circuit determined that the beneficiaries' interests were not vested.  It explained:

> Although that apparently makes no difference in light of Reiser [State Street Bank and Trust Co. v. Reiser, 7 Mass. App. Ct. 633 (1979)] and Stockdale [ITT Comm. Fin. Corp. v. Stockdale, 25 Mass. App. Ct. 986 (1988)], it does mean that their rights are inchoate at the present time. Under Massachusetts law, whether a right in a trust has vested depends on "whether, in substance, the interest is sufficiently established to constitute an interest or right which has accrued to its holder." New England Merchants Nat'l Bank v. Groswold, 387 Mass. 822, 444 N.E.2d 359, 363 (1983). That an interest is "subject only to total or partial defeat by biological events" does not make it inchoate. Id. Thus, a beneficiary's right to receive part of the trust property that depends only on his or her survival until the death of other persons is a vested property right. See Id.; Billings v. Fowler, 361 Mass. 230, 279 N.E.2d 906, 908 (1972); Whiteside v. Merchants' Nat'l Bank, 284 Mass. 165, 187 N.E. 706, 709 (1933); Alexander v. McPeck, 189 Mass. 34, 75 N.E. 88, 92 (1905). *But where the right depends on the exercise or non-exercise of powers held by another, the beneficiary's right does not vest until the person holding the powers can no longer exercise them.* See Reiser, 389 N.E.2d at 770 (remainder interests of beneficiaries became vested upon death of settlor because his powers to amend or revoke the trust and direct payments from it died with him); Old Colony Trust Co. v. Clemons, 332 Mass. 535, 126 N.E.2d 193 (1955) (rights of remainder beneficiaries did not vest until settlor's death where he had the right to revoke the trust or change beneficiaries). . . .

The Debtor asserts that because he has no power to alter, amend, or revoke the 1988 Trust, the Chapter Trustee should be precluded from obtaining turnover of its assets.  The

18

Court disagrees.  Although the 1988 Trust circumscribed the Debtor's access to trust funds, the Debtor was not powerless with respect to the disposition of its assets, <u>and</u> he retained the ability to divest Henault-Tosi of any entitlement to distributions.  Through Article 4 of the 1988 Trust, reproduced above, the Debtor retained "the right to withdraw at one time or from time to time up to fifty percent (50%) of the whole of the principal" during his lifetime.  With respect to Henault-Tosi, the Debtor, through Article 4 , granted himself the ability to direct the trustees <u>not</u> to distribute "such amounts of the net income and principal as the trustee in their discretion determine to be necessary" for his health support and welfare and that of his spouse.  Through Article 4, the Debtor empowered the trustees to distribute net income and principle for his well being and that of his spouse "in the absence of contrary instructions" from him.  Thus, during his lifetime, he reserved the power to divest his spouse (and any issue) of the right to receive any distributions from the 1988 Trust.

Similarly, in Article 5(B) i), the Debtor reserved the right to divest Henault-Tosi of the remaining principal and undistributed income after his death.  Through that article, he instructed the trustees to make distributions "upon such new trusts, conditions or limitations as I may appoint by will, expressly referring to this trust agreement." Although in the next paragraph (Article 5(B) ii)), he provided for the trustees to pay Henault-Tosi or his living issue "such amounts or the whole of the net income and principal of such trust as the trustee in their discretion shall determine to be necessary for their health, support or welfare," he nonetheless established a mechanism to provide her with nothing through

19

his will.  Accordingly, under the principles of Massachusetts law espoused by the First

Circuit in Markham v. Fay, the Court finds that Henault-Tosi does not hold a vested

interest in the 1988 Trust.

The Debtor and Henault-Tosi also argue that the Debtor was the "settlor in name

only," and that the 1988 Trust was not, in fact, self-settled because trust property passed

directly from the executors to the trustees of the 1988 Trust.  The Court rejects this

argument.  In the first place, the Debtor testified at his deposition that he read and

understood the terms of the 1988 Trust and that he was entitled to receive a quarter of his

father's estate.  The trust document contemplates the transfer of property from the Debtor

"or any other source."  In the second place, the Debtor admitted that the monies that

funded the 1988 Trust, including his share of life insurance proceeds, pension and profit

sharing proceeds, severance pay and stock redemption proceeds, were monies that he was

legally entitled to receive and did receive from the settlement of this father's estate.  In

other words, there can be no dispute that the monies that funded the 1988 Trust were

attributable to the Debtor's share of his father's estate.

The Debtor and Henault-Tosi cite Brooks v. Interfirst Bank, Fort Worth (In re

Brooks), 844 F.2d 258 (5th Cir. 1988), and Mills v. Durst, 594 N.Y.S.2d 537 (1993), in support

of their position.  In Brooks, the Fifth Circuit  stated:

> The mold in which the transaction is cast does not determine who is the
> settlor of a trust. The person who provides the consideration for a trust is the
> settlor even if another person or entity nominally creates the trust. Neither
> Texas courts, nor federal courts that follow Texas law, ought to follow a
> purely paper trail. *We look instead to the reality that lies behind.*

20

<u>Id.</u> at 263 (emphasis supplied). The Court finds that the "reality" of the situation following Jerome R. Tosi's death was that his children were entitled to share equally in his "residuary estate," and that his executors owed a fiduciary duty to implement the terms of the will. Specifically, the executors of the  estate had a fiduciary duty to distribute to the Debtor monies to which he was legally entitled, which they did in accordance with the terms of the will and the Trust provisions.  *See* <u>Onanian v. Leggat</u>, 2 Mass. App. Ct. 623, 625 (1974)("The fiduciary duty of an executor or administrator is separate and distinct from the contractual duty he may incur when he enters into agreements with third persons. The first is owed to and enforceable by the beneficiaries of the estate, while the second is owed to and enforceable by a stranger to the estate.").  Although the Debtor and Henault-Tosi suggest that the Debtor was not the settlor of the 1988 Trust, they do not explain how the executors could settle the 1988 Trust as they had no on-going claim to the Debtor's share of Jerome R. Tosi's estate and would have breached their fiduciary duties by withholding distribution to the Debtor.  Although the Debtor did not have physical possession of the monies that were used to fund the 1988 Trust, he recognized that he was legally entitled to them.  Adopting the position advanced by the Debtor and Henault-Tosi would have the effect of elevating form over substance.

The <u>Mills</u> decision cited by the Debtor and Henault-Tosi provides no support for their position that the 1988 Trust was not self-settled.  In <u>Mills</u>, the petitioner was the mother of a four-year old girl, who suffered severe and permanent brain injuries as a result of an automobile accident.  The petitioner applied to the court for approval of a settlement

21

on behalf of her daughter.  Under the proposed settlement, the defendants' insurer was to

pay a significant sum of money to create a structured settlement pursuant to which

payments would be made to a trust, whose terms forbid expenditure of trust funds for any

items that would be covered by public assistance.  594 N.Y.S.2d at 538.  The court referred

to the trust as a "supplemental needs trust."  Id. at 679.  The nature of such a trust would

deprive the infant of control over the settlement proceeds after she reached the age of 18.

The court determined, among other issues, that "[n]othing on the face of EPTL 7-3.1(c)[5]

suggests that proceeds of an infant's accident settlement placed in trust by the insurance

company payor by court order (made in the process of approving the infancy settlement)

and under court supervision would be considered self-settled . . . . "  Id. at 541.

The Court finds that the Mills case bears no resemblance to the instant case.  The

Debtor was not incompetent at the time he executed the 1988 Trust and a court did not

create or approve the 1988 Trust.  He testified that he read and understood the document,

something that the infant in Mills would never be able to do.  Moreover, the Debtor, as

---

[5] That provision of New York law pertains to trusts which directly or indirectly
provide for the suspension, termination or diversion of principal, income or other
beneficial interest of the creator of a trust or his or her spouse in the event either should
apply for medical assistance or require medical, hospital or long-term nursing care.  The
statute provides that such trusts "shall be void against the public policy of the state of
New York, without regard to the irrevocability of the trust or the purpose for which the
trust was created."  N.Y. Estates, Powers and Trusts Law § 7-3.1(c).  The court in the
Mills case added that the legislative history of the statute gave "no indication that the
creation by courts of a trust to protect the accident recovery of an infant or incompetent
plaintiff is an evil the legislature intended to remedy."  594 N.Y.S.2d at 542.

noted above, retained significant control over trust assets - - he could obtain 50% of the

principal and he could direct the trustees to cease making distributions to him or to his

spouse.

In the seventeen year period between the creation of the 1988 Trust and the Debtor's

decision to file a bankruptcy petition, the Debtor took no steps to challenge his share of his

father's estate or to void the terms of the 1988 Trust.  The Court agrees with the Chapter

7 Trustee that the Debtor ratified the terms of the 1988 Trust and cannot now be heard to

complain that he signed the document under duress or that he did not execute the 1988

Trust as settlor after obtaining 50% of its assets in 1990 and benefitting from  payments

over the years.

In the case cited by the Chapter 7 Trustee, Cabot Corp. v. AVX Corp., 448 Mass. 629

(2007), a case involving a commercial contract, the Supreme Judicial Court stated that "[t]he

assertion of duress must be proved by evidence that the duress resulted from defendant's

wrongful and oppressive conduct and not by plaintiff's necessities." Id. at 638 (citations

omitted).  Although the instant case does not involving contract law, the principles set forth

in Cabot Corp. are germane to resolution of the issues presented.  The Debtor's sister

engineered creation of the 1988 Trust because of her concern about her brother.  At the time

the 1988 Trust was executed, her brother had just been terminated from his employment,

and Dr. Tosi  was concerned about his welfare and financial ability to address his health

issues in the future.[6] Although either she or Attorney Place may have mislead the Debtor about the necessity of having monies placed in trust, her motivation was not "wrongful and oppressive." Indeed, as noted above, the Debtor reserved the right to withdraw 50% of the principal of the trust at any time and, in fact, did so.

In Cabot Corp., the court also recognized that a contract that is voidable for duress may be ratified and affirmed, adding "[a] party must complain promptly of coercive acts that allegedly forced it into the contract or the defense of duress is waived, and the contract ratified." 448 Mass. at 642-43. In the instant case, the Debtor complained to his sister about the necessity of executing the 1988 Trust, but he never took legal action to void the trust, choosing instead to accept the benefits. Although the Debtor may have had grievances with his siblings, for purposes of Count I of the Chapter 7 Trustee's complaint, he waived any defense to the Trustee's Motion on the ground that he executed the 1988 Trust under duress or a misapprehension of his legal rights.

## V. CONCLUSION

For the reasons set forth above, the Court shall enter an order granting the Chapter 7 Trustee's Motion for Partial Summary Judgment and denying the Motion for Partial Summary Judgment filed by the Debtor and Diane Henault-Tosi.

By the Court,

---

[6] A plausible inference also may be drawn that the Debtor may have been so angry about his abrupt termination that he may have sued his brothers had he obtained his share of his father's estate directly, thereby disrupting the overall settlement of Jerome R. Tosi's estate and the business of Pastene Corporation.

24

Joan N. Feeney
United States Bankruptcy Judg

Dated: February 22, 2008
cc: Brian E. Donovan, Esq., Nancy Maule-McNally, Esq., James M. Liston, Esq., Howard M.
Brown, Esq., Joseph S.U. Bodoff, Esq.,

25